# APRIL TERM, 1861.

SARAH A. WEATHERSBY, by her next friend, *v.* OWEN
WEATHERSBY.

1. HUSBAND AND WIFE: PROVISION FOR SEPARATION CEASES ON RECON-
CILIATION.—Where a settlement is made by the husband upon the wife, for
a permanent separation, a reconciliation and cohabitation afterwards extin-
guish any future claim of the wife under the settlement, which will not be
revived by any subsequent disagreement between the parties.   See Clancy
on Husb. and Wife, 405; Bright on Husb. and Wife, 319.
2. SAME: SAME: CASE IN JUDGMENT.—Upon the marriage in 1833 the wife
was the owner of two slaves.   In 1837 there was a separation by mutual
agreement of husband and wife, and the husband gave up to the wife the slaves
as her separate property, and surrendered his marital rights therein, and
permitted her to retain possession of them.   In 1840 the parties were recon-
ciled, and the wife returned to the husband bringing with her the slaves.
Afterwards she filed her bill for a divorce and to recover the slaves under
the title above stated:—*Held*, that the surrender of the slaves in 1837, by
the husband to the wife, was not an absolute gift of them to the wife, but
a provision for separation, and that on reconciliation, notwithstanding the
passage of Act of 1839 during the period of separation, in relation to the
separate property of married women, the original right of the husband to
the slaves was revested, and that the wife could not recover them.

APPEAL from the Chancery Court of Simpson county.   Hon.
John E. McNair, chancellor.

*Thomas Hoover,* for appellant, cited and relied on *Townley* v.
*Sinclair,* 3 How. Miss. R. 327; *Ratcliffe* v. *Dougherty,* 24 Miss.
R. 181; 2 Kent. Com. 163; *Wells* v. *Treadwell,* 28 Miss. R. 717;
*Warren* v. *Brown,* 25 Id. 66; *Elmes* v. *Hughes,* 3 Dessaussure.

*Harris* and *Hurst,* for appellee, cited 2 Story Eq. 603; *Grand*

*Gulf Bank* v. *Barnes et al.*, 2 S. & M. 165; 5 Ves. R. 78, 79; *Shotwell* v. *Lawson*, 27 Miss. R. 630.

HANDY, J., delivered the opinion of the court:

This bill was filed by a wife against her husband for a divorce and alimony, and for the recovery of certain slaves in the possession of the husband, which she claims as her separate property, and for the hire of certain other slaves, her separate property, for the use of which during the marriage the husband is sought to be charged.

A demurrer was filed to so much of the bill as sought to recover from the husband the possession of the slaves held by him. This demurrer was sustained and the bill dismissed as to those slaves, and from that decree this appeal was taken; and the only question here presented for decision is, whether the allegations of the bill setting forth the right of the complainant, if admitted to be true, are sufficient to entitle her to the relief prayed.

The statements of the bill touching this point are, in substance, that the parties intermarried in the year 1833, and lived together as husband and wife until the year 1837, when they separated by mutual consent, and continued to live apart until the latter part of the year 1839 or the beginning of the year 1840, when the disagreements between them were happily reconciled, and she returned again to him as his wife and at his solicitation, and they then lived together from that time in varied happiness and trouble until the time of filing this bill, his treatment of her having then become so intolerable as to induce her to file the bill and to seek a recovery of her property and a divorce. Her title to the slaves in question is thus stated: that her father gave her, and she took to her husband's possession in 1833, two slaves, who with their increase are sought to be recovered; and when she and her husband separated in 1837, that her husband "gave up to her" these slaves "as her own property again, and under and by reason of this surrender by him of his marital rights therein, she carried said slaves with her to her father's house, upon the separation, where they remained with her as her own separate property by and with the consent of her husband, and free from his control, claim, or management until their reconciliation, and

·her return to his bed and board as above stated," when she took with her the slaves, and they have remained there ever since, and were in the husband's possession at the time of filing the bill.

The question presented upon this state of case is, whether by his giving up to her the slaves upon the separation, in the manner stated in the bill, the title vested in the husband by the marriage was divested, and restored to the wife so as to vest a separate estate in her, in virtue of the statute of 1839 in relation to the separate property of married women, and that this separate estate in her continued notwithstanding the reconciliation which afterwards took place between them.

It is not stated for what purpose the slaves were given up by the husband to the wife, upon the separation.   From the circumstances of the transaction as stated, it cannot be regarded more favorably to the right of the wife than as a provision for her support upon the separation; for if not supported by that consideration, for aught that appears by the statements of the bill, it would be without consideration and not binding on the husband. Regarding it, then, as a provision for her maintenance upon the separation, that consideration failed when the reconciliation took place and the cohabitation of the parties was restored; and their rights would be placed in the condition in which they stood before the separation.   For it is well settled that, where a settlement is made by the husband upon the wife for a permanent separation, if she return to her husband's house and protection, such conduct on her part amounts to a total extinguishment of any future claim under the settlement, which cannot be revived by any subsequent disagreement between the parties. Clancy on Husb. and Wife, 405; 2 Bright on Husb. and Wife, 319.

It is very clear that the separation is not in law a dissolution of the marriage, but a mere suspension of the relations of husband and wife.   Hence a reconciliation restores the parties to the condition in which they were placed at the time of the separation, and, as between them, must put an end to all arrangements made, or rights conferred, by the husband with reference to the separation.   When, therefore, it is alleged that, upon the separation, the husband "gave up" the slaves to the wife as her sepa-

rate property, and "surrendered his marital rights therein," the rights acquired thereby by the wife must be governed and ascertained by the purpose for which the slaves were given up; and when that ceased, the gift also ceased and his rights were restored. Hence, though a married woman may acquire a separate estate in property by gift from her husband, which a court of equity will enforce, yet this case does not depend upon the existence of that right; but it is the case of a gift to the wife in consideration of, and as a provision for, separation, which is extinguished by the restoration of the conjugal relations of the parties.

Upon this view, the demurrer was properly sustained, and the decree is affirmed.