SOUTHWICK, P.J.,
DISSENTING:
¶ 16. The chancellor held that Mrs. Roberts, the procurer of the divorce in the wrong county, was estopped from asserting its invalidity. I agree and therefore respectfully dissent to this reversal.
¶ 17. The majority is correct to reject precedents cited by Mr. Roberts that in many kinds of suits, unless error in venue is raised, the issue is waived. A divorce is treated differently. Other than for a divorce based solely on irreconcilable differences, when “the defendant be a resident of the state, the complaint shall be filed in the county in which such defendant resides....” Miss.Code Ann. § 93-5-11 (Supp.2002). A spouse’s “residence” under this statute has long been held to be the same as the person’s domicile. E.g., Bilbo v. Bilbo, 180 Miss. 536, 177 So. 772, 775 (1938). This divorce instead was filed in the residence of the plaintiff-wife. The divorce was there granted without any objection. Under existing precedents, only the proper county in a contested divorce has jurisdiction. Price v. Price, 202 Miss. 268, 272, 32 So.2d 124, 126 (1947).
¶ 18. One reason for the significance of statutory venue is that the state constitution makes general statutes controlling as to changing venue for suits. Miss. Const art. 4, § 90(c) (1890). The legislature has established venue for chancery suits. Miss.Code Ann. §§ 11-5-1 and 11-5-3 (Rev.2002). It has also incorporated by reference the court-created Rules of Civil Procedure for a change of venue in cases in which a jury will be used. Miss.Code Ann. § 11-5-5 (Rev.2002). None of these just-cited statutes establish venue for divorce actions. Instead, that is controlled by Section 93-5-11. Statutory rules for change of venue may not constitutionally be altered by court rule.
¶ 19. This constitutional command does not answer whether a venue error can be waived. The Supreme Court in Price and later cases has given that answer. For the reasons there explained, proper venue is a jurisdictional issue. It therefore would not be subject to waiver.
¶ 20. Despite the constitution and the easelaw already cited, I find that the chancellor was correct in refusing to set aside the divorce that Mrs. Roberts herself filed for and obtained in the wrong county. Not permitting venue to be waived in divorce suits protects against late-discovered error by a defendant. What the chancellor first, and now this Court on appeal, must decide is whether the person who brought the suit is similarly always able to raise *479 the same error. Precedents support that a void judgment can be attacked whenever, wherever and however the issue arises. Goodsell v. Delta & Pine Land Co., 72 Miss. 580, 18 So. 452, 453 (1895) (whenever and however); Hamilton v. Homer, 46 Miss. 378, 388 (1872) (whenever and wherever). What I cannot find is any case that holds that the judgment may be set aside by whomever brings the challenge to it. Instead, estoppel is applied even to challenges to void judgments.
¶21. I start with the key precedent that announced that bringing a divorce suit in the proper county is a jurisdictional issue. Price, 32 So.2d at 126. The Supreme Court found that none of its prior precedents resolved the matter. However, a “review of the authorities to the effect that a divorce suit brought in the wrong county goes to the jurisdiction, and is not a mere matter of venue, is found ih Haygood v. Haygood, 190 Ga. 445, 9 S.E.2d 834, 130 A.L.R. 87, and the annotations in the volume last cited.” Price, 32 So.2d at 126. Since Haygood and the annotation are cited approvingly as the central authorities for the decision, we too should make a review of these sources for evidence of the breadth of the rule.
¶22. Haygood certainly supports the rule that Price drew from it. Oddly, the Haygood court quoted only the headnotes from a precedent in order to find that a divorce judgment was “void, for the reason that the husband could sue only in the county of his wife’s residence.” Haygood, 9 S.E.2d at 838, quoting a headnote in Odum v. Odum, 132 Ga. 437, 439, 64 S.E. 470, 471 (1909). However, the court in Haygood went on to discuss at some length two cases in which void judgments were not permitted to be set aside since the complaining parties were estopped:
In McConnell v. McConnell, 135 Ga. 828, 70 S.E. 647; Fuller v. Curry, 162 Ga. 293, 133 S.E. 244; the principles announced above were recognized, but on the principle of estoppel it was held that the defendant, who had participated in the divorce suit by acknowledging service and jurisdiction of the court, could not afterward come into equity and ask the affirmative relief of setting aside the verdicts and decree for want of jurisdiction. In the McConnell case it was said that in the circumstances the plaintiff in the equity suit did not come with clean hands. This is different from the instant case, where no such facts appear upon which to deny the defendant entry to the court of equity.
Haygood, 9 S.E.2d at 839. A later Georgia case relied on these same precedents, the ones that also were foundational for Mississippi’s Price decision, to mark this distinction:
[Though] a void judgment may be attacked in any court and by any person, these Code sections must be construed in the light of equally well established principles of law and equity to the effect that “He who would have equity must do equity”; that he who comes into a court of equity with unclean hands must be denied relief; that one will not be permitted to take advantage of his own ..wrong....
Musgrove v. Musgrove, 213 Ga. 610, 100 S.E.2d 577, 578 (1957) (citations omitted).
¶ 23. Those who wished to understand the Price reasoning were referred not only to Haygood but also to “the annotations in the volume last cited.” Price, 32 So.2d at 126, referring to Annotation, “Decree of Divorce or Separation as Subject to Attack Because Suit was Brought in Wrong County or Judicial District,” 130 A.L.R. 94 (1941). In this ten-page annotation was a page and a half section on estoppel. Id. at 101-03. That section was introduced with the statement that in “some circumstances, *480 it has been held that the party attacking a decree of divorce because it was filed in the wrong county or judicial district is estopped to do so.” Id. at 101. All the cases that are then discussed, which include McConnell, found that there was estoppel.
¶ 24. The Price court did not necessarily endorse everything in the two principal authorities that it cited, but at least it can be said that the sources for the Price rule clearly embraced estoppel.
¶ 25. Estoppel of a plaintiff who is responsible for procuring a void judgment has been the rule in Mississippi. One important precedent on this issue is Harrison v. G & K Investment Co., 238 Miss. 760, 115 So.2d 918 (1959). There, ownership of oil and gas rights would be determined by the validity of a divorce twenty-five years prior to the suit. Joseph Knox and Alpha Bryant were married in 1923. Mrs. Knox was committed to a mental hospital in 1928. The next year, her husband married another woman without acquiring a divorce. In 1930, Mr. Knox procured the signature of his incompetent first wife to divorce pleadings. He was then granted a divorce based on her being-insane at the time of their marriage. Mr. Knox almost immediately underwent a second marriage to the woman he had attempted to wed the previous year. His first wife, Alpha Knox, died in 1934 and left no surviving children or other spouse. Harrison, 115 So.2d at 920.
¶26. Many years after that, in 1958, suit was brought because of mineral interests that the first Mrs. Knox had owned when she died, interests whose value was not appreciated for decades. The ex-husband or widower, as the case would decide, argued that the divorce has been obtained only because of criminal charges brought against him for bigamy. The argument followed that the divorce was void because it was based on coercion. The court did not address the factual validity of that assertion, but only held that “a husband could not have a divorce decree set aside where it was rendered at his instance, with knowledge, actual or presumed, of its irregularity.” Id. at 923. To support that statement, the court relied on a precedent that dealt with a potentially defective notice by publication, which was “not void, having been rendered by a court of general jurisdiction.” Cratin v. Cratin, 178 Miss. 881, 174 So. 255, 255 (1937), cited in Harrison, 115 So.2d at 923.
¶ 27. Then the court made this statement about void decrees, not just irregular ones:
It is true that our cases hold that an absolute void decree, order or judgment may be assailed anywhere on collateral attack, but the right to do so is limited to those who are not estopped by affirmative conduct, laches or some other equitable doctrine.
Harrison, 115 So.2d at 923. This language is dicta, as there was no finding that the 1930 divorce was void because of coercion.
¶ 28. The Harrison court did not identify any precedents on estoppel. Examining some of the prior caselaw, I find one decision cited in Harrison for a different proposition to contain this statement: “a wife was estopped to claim a share in her late husband’s estate, as a widow, although a divorce obtained from her in a suit brought by the guardian for the insane husband was absolutely void, [since] she had accepted alimony under the decree and had contracted a subsequent marriage.” Minor v. Higdon, 215 Miss. 513, 529, 61 So.2d 350, 355-56 (1952), cited in Harrison, 115 So.2d at 922-23. Citing several authorities, the Supreme Court in another precedent found that “it is settled law here, that the acceptance of the distributive share of the pur *481 chase money realized on a sale for partition under a void decree estops.” Keel v. Jones, 93 Miss. 244, 47 So. 385, 385 (1908).
¶29. The source of the estoppel in some of the precedents is the receipt of money or other direct benefits under a void decree. Estoppel also arises, though, from the “clean hands” doctrine as noted in the Georgia McConnell case used in the precedent on which the Mississippi Price decision relied.
¶ 30. A later decision paraphrased Harrison with these words:
As a general rule, a void decree, order or judgment may be assailed anywhere on a collateral attack, but the right to do so is limited to those who are not es-topped by affirmative conduct which caused or resulted in the decree sought to be set aside.
Krohn v. Migues, 274 So.2d 654, 657 (Miss.1973). In Krohn, the natural mother of a minor child sought to use habeas corpus proceedings to overturn an adoption decree. The case turned on whether the failure of the mother to include the child’s natural father in the earlier adoption proceedings rendered the judgment void. The natural mother’s failure to join the father would have estopped her, but then the adoptive mother also failed to challenge his exclusion despite her knowledge of him. The estoppels cancelled each other and the voidness of the judgment could be shown. Krohn, 274 So.2d at 658. I find it to be critical that there was a third individual whose absence created the voidness. To estop either participant would cause the fraud on the missing father to remain uncorrected: The first judicial opportunity to provide redress needed to be seized.
¶ 31. I do not find that the principle of double estoppel should extend beyond facts such as in Krohn. Both spouses here actively participated in the divorce litigation. Some of the Georgia precedents relied upon in Price would estop both parties who participated in a divorce gained in the wrong county from setting it aside. E.g., McConnell, 70 S.E. at 647. We need not address whether the defendant in a divorce would be estopped from seeking later to set it aside. Our issue is whether the plaintiff-spouse who brought the suit would be. There is no missing third party here as in the Krohn adoption proceedings. Krohn apparently was a collusive lawsuit in which the two parties agreed not to notify the father in order to facilitate the adoption. I would conclude that it is the missing father’s interests in Krohn that required consideration of the fact that the decree was void.
¶32. To determine if estoppel should apply here, we need to determine the core requirements for the doctrine. The Supreme Court has declared the “modern definition of an estoppel is said to be: ‘The preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, on his own part or the part of those under whom he claims, or by an adjudication upon his rights which he cannot be allowed to call in question.’ ” Reliance Mfg. Co. v. Barr, 245 Miss. 86, 99, 146 So.2d 569, 574 (1962) (quoting Bouviee’s Law DiCtionary, 1929 Ed., p. 365).
¶ 33. It is true that estoppel often is based on concealment of facts. “The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party’s ignorance of the true facts, and reliance to his damage upon the representation or silence.” Crowe v. Fotiades, 224 Miss. 422, 443-44, 80 So.2d 478, 486 (1955). Here there was no concealment, as the com *482 plaint for divorce stated that the defendant was a resident of Senatobia, which is in Tate County. The jurisdictional issue apparently was simply overlooked by the trial court. Yet as the Supreme Court has noted, “estoppels have been and are the subject of many definitions.” Perrien v. Mapp, 374 So.2d 794, 797 (Miss.1979). I find compelling on the issue before us, that the party who through ignorance or boldness brought the suit in the wrong county would be using her own error to seek the return of something she had earlier asked the court to take, namely, her marriage.
¶ 34. I do not find that the chancellor’s failure to notice the jurisdictional defect alters the operation of estoppel. The plaintiff asserted that the court had jurisdiction even though an alert reading of her complaint would have revealed that the court did not. The court proceeded to grant her what she requested that she be given. The former husband has since relied on that divorce, which the former wife seeks to improve upon in this new suit.
¶ 35. To see if the principle of estoppel is consistent with the Mississippi decision in Price (the case holding void a divorce decree in the wrong county) and its offspring, I have examined Price and the eases that have cited it. Price itself was not a case in which estoppel was relevant. The divorce complaint had been dismissed because it was filed in the wrong county. The petitioning spouse appealed. The Supreme Court noted that a decree of divorce would have been void, but there was no divorce decree to set aside. Price, 32 So.2d at 125.
¶ 36. There are only eight Mississippi divorce cases that have cited Price. Three of them, like Price itself, were appeals of the dismissal of complaints not brought in the defendants’ home counties. Stark v. Stark, 755 So.2d 31 (Miss.Ct.App.1999); Ross v. Ross, 208 So.2d 194 (Miss.1968); Cruse v. Cruse, 202 Miss. 497, 32 So.2d 355 (1947). No potential for estoppel there.
¶ 37. Two of the cases discussed the issue but found that the divorce action had been brought in the proper county. Miller v. Miller, 323 So.2d 533 (Miss.1975); Carter v. Carter, 278 So.2d 394 (Miss.1973). Again, no potential for estoppel arose.
¶ 38. Three others cited Price for propositions other than that the decree was void if the divorce action is filed in a county other than that of the defendant’s residence. Joiner v. Joiner, 739 So.2d 1043 (Miss.Ct.App.1999); Wells v. Roberson, 209 So.2d 919 (Miss.1968); Moran v. Moran, 252 Miss. 890, 173 So.2d 916 (1965).
¶ 39. The only court that has discussed Price in a fact situation such as we have before us was an intermediate Louisiana appellate court, which was considering whether to give full faith and credit to a Mississippi divorce. Porter v. Hawkins, 240 So.2d 912, 913 (La.Ct.App.1970). There, the spouse seeking to set the divorce aside had been the defendant in the Mississippi action. A contested divorce had been granted to the plaintiff-husband in Madison County, Mississippi, when that was not the county of residence for either spouse. The Louisiana court agreed that on these facts, the divorce would be set aside. This may be inconsistent with the Georgia McConnell case, relied upon in the precedents cited in Price, which would es-top either spouse who actively participated in the earlier divorce. However, an equally reasonable application of estoppel is to limit it to the party who brought the action in the wrong county.
¶ 40. Many divorce cases have approved the doctrine of estoppel though not necessarily applied it. Most of the divorce decrees in the following precedents were simply invalid: Kolikas v. Kolikas, 821 *483 So.2d 874 (Miss.Ct.App.2002) (no estoppel of defendant in divorce who had not indicated reliance on decree); Scribner v. Scribner, 556 So.2d 350 (Miss.1990) (estop-pel because of remarriage in rebanee on divorce); Zwerg v. Zwerg, 254 Miss. 8, 179 So.2d 821 (1965) (estoppel to assert invalidity of decree because of admitted cohabitation after it was entered); Joy v. Miles, 190 Miss. 255, 199 So. 771 (1941) (decree abegedly obtained by husband without wife’s knowledge, but wife estopped to set aside because she remarried); Cratin v. Cratin, 178 Miss. 881, 174 So. 255 (1937) (“may become estopped from complaining of a defective ... decree by accepting the benefit thereof’); Hester v. Hester, 103 Miss. 13, 60 So. 6 (1912) (estoppel from long acquiescence).
¶ 41. My concern is that parties not misuse the court system. The purpose of the related doctrine of judicial estoppel, which is not directly applicable, is to prevent parties from playing “ ‘fast and loose with the courts’ which has been emphasized as an evil the courts should not tolerate. Scarano v. Central Railroad Co., 203 F.2d 510, 513 (3d Cir.1953). The basic premise behind the doctrine is that parties should not be permitted to assert inexplicably contrary positions in separate lawsuits.” Illinois Central RR. Co. v. Haymer, 96-CA-01234 (Miss.Ct.App. Oct. 27, 1998) (unpublished opinion). Later in this opinion, we stated “what this doctrine of judicial estoppel is trying to prevent is the misuse of the courts by inconsistent representations, in which litigants choose case by case what representations may do them the most good.”
¶ 42. In the divorce matter before us, I find fast and loose practices. So does the majority. The difference is that I find a more direct manner in which to deal with the sleight-of-hand that is being practiced before our eyes. It is to deny the relief that Mrs. Roberts requests.
¶43. Leaving a void judgment untouched should not be viewed as a revolutionary concept. Estoppel to complain of the judgment has the same effect as an absence of “standing.” Not everyone can complain about what a court has done, no matter how errant it might be. A stranger to the judgment, i.e., someone whose interests are in no way affected, generally cannot. Similarly, the person who intentionally filed in the wrong county, thereby causing the void judgment to be entered, must suffer the consequences unless there is someone else willing to take up the issue. The only person here complaining is the former plaintiff. Her own actions gained her no right to complain.
¶ 44. Since this is an effort to undo a divorce, the image the attempt conjures up is the reverse of “having made your bed, you must lie in it.” The effect is the same, though. The person who brought the suit that unmade the bed cannot later assert her own error in an attempt to remake it.
McMILLIN, C.J., IRVING AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.